Exhibit A

COPY    **07 CIV. 5947**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DAVID E. McCLAIN,

                  Plaintiff,

        -against-

THE UNION CENTRAL LIFE
INSURANCE COMPANY,

                  Defendant.
-------------------------------------------------------------X

Index No.

**BRIEANT**

**COMPLAINT**

JURY TRIAL DEMANDED

F I L E D

JUN 2 2 2007

USDC WP SDNY

Plaintiff, David E. McClain ("McClain"), by his attorneys, Foulke Law Offices,

alleges for his Complaint against defendant, THE UNION CENTRAL LIFE INSURANCE

COMPANY ("Union Central"), as follows:

## NATURE OF THIS ACTION

1.      This action arises out of Union Central's wrongful termination of life

insurance benefits to their policy holder David E. McClain for his "total disability" as that term

is defined in The Group Life Policy, a partial copy of which is attached hereto as Exhibit "A", as

issued to Mr. McClain.

2.      The policy was issued to Our Lady of Mercy Medical Center and, at all

times mentioned herein, Mr. McClain is insured under the policy. The policy is not governed by

the Employment Retirement Income Security Act of 1974 ("ERISA") and ERISA does not have

jurisdiction over this matter.

3.      On account of Union Central's refusal to honor its contractual obligations

and wrongful denial of benefits to Mr. McClain, he has sustained and will continue to sustain

damages.

4.      As an insured under the policy, Mr. McClain was entitled to receive a death benefit referred to as a "Death Benefit Continued During Total Disability" or "Premium Waiver Group Life coverage". The Death Benefit consisted of two times Mr. McClain's annual salary until the age of 70 with a continuation benefit of one times annual salary after age 70.

5.      Union Central has wrongly and falsely made claims that Mr. McClain is not totally disabled and not entitled to the coverage under the policy. Union Central has ignored all of the medical records and findings of Mr. McClain's treating physicians and has concocted pre-textual reasons to attempt to avoid its obligations to Mr. McClain.

6.      On account of Union Central's denial of benefits, Mr. McClain is suffering and will continue to suffer loss of the benefits Union Central contractually agreed to provide to Mr. McClain.

### THE PARTIES

7.      Plaintiff, McClain, presently resides part time in the Town of Goshen, County of Orange, and State of New York.

8.      Union Central operates its principal office for business located in Hartford, Connecticut.

9.      At all times mentioned herein, defendant, Union Central, is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut.

10.     Defendant, Union Central, regularly conducts and solicits business in the State of New York, engages in a persistent course of conduct in the State of New York, derives substantial revenues from life insurance policies sold and consumed and services rendered in the State of New York, and has regional offices for the sale of life insurance products including death benefit life insurance policies in the State of New York.

11.    Upon information and belief, Union Central has agents who sell life insurance products in the County of Westchester and State of New York.

12.    At all times mentioned herein, defendant, Union Central, committed tortious acts within the State of New York or within the State of Connecticut causing injury to plaintiff, McClain, within the State of New York.

13.    Union Central is licensed to do business as a foreign for profit corporation in the State of New York.

## JURISDICTION AND VENUE

14.    This Court has diversity jurisdiction pursuant to 28 USC § 1332 as there is complete and full diversity between plaintiff and defendant.

15.    Venue is proper in the United States District Court for the Southern District of New York located in White Plains, New York pursuant to §§ 1391(a) and (c).

16.    The amount is controversy in this matter exceeds the sum of $75,000.00.

## STATEMENT OF FACTS

**The Policy**

17.    Mr. McClain graduated from Drexel Institute where he obtained a Bachelors of Science in Business Administration and holds an MBA from Ball State University.

18.    Prior to July of 1997, Mr. McClain worked in hospital administration as a Logistics Manager at Our Lady of Mercy Medical Center.

19.    During the course of Mr. McClain's employment and at the time Mr. McClain was last able to work on or about July 3, 1997, Union Central underwrote a term life insurance policy providing employees, including plaintiff David McClain, with "Premium Waiver Life Benefits".

3

20.    At all times mentioned herein, David E. McClain is an insured under the aforementioned policy of insurance held by Our Lady of Mercy Medical Center and known as Policy No. G306123A.

21.    Under the terms of the policy, Union Central is obligated to pay a death benefit upon death of the insured and during a period of total disability.

22.    Under the terms of the policy, Union Central is obligated to pay a death benefit equal to two times the insured's annual salary until the age of 70 and a continuation benefit of one times the insured's annual salary after age 70.

23.    Under the terms of the policy, Union Central is obligated to continue policy death benefits during periods of total disability.

24.    The Policy defines total disability as follows:

"Total disability" and being "totally disabled" refer to disability caused by an injury or sickness that disables a person to the following extent:

(1)    For the first two continuous years of disability: the person must be unable to perform the substantial duties of his or her occupation.

(2)    After two continuous years of disability: the person must be unable to perform the duties of any occupation and, in fact, not be engaged in gainful employment. For this item, "any occupation" means one for which the person qualified by education, training or experience.

25.    Since July 1997 Mr. McClain has been totally disabled under the terms of the policy and unable to perform all of the duties of his occupation or any occupation. Mr. McClain is under the care of treating physicians and is unable to work. He suffers from a total disability as defined by the terms of the policy.

26.    Despite the obvious, Union Central refuses to honor its commitment to Mr. McClain and has wrongfully terminated death benefits under the terms of the policy.

**Mr. McClain's Disability**

27.    On or about July 7, 1997, Mr. McClain was suffering from severe aortic stenosis and underwent open heart surgery including an emergency aortic value replacement and double coronary bypass. Since the emergency open heart surgery, Mr. McClain has been totally disabled and suffers from a total disability as that term is defined in the Policy.

28.    Since the open heart surgery, Mr. McClain has been receiving continuous medical treatment for his disability and continues to suffer disability.

29.    After the surgery, Mr. McClain underwent cardiac rehabilitation and became concerned that his recovery was progressing slowly. Specifically, he was constantly exhausted, fatigued, unable to concentrate, and his daily functioning was dramatically curtailed and deteriorated.

30.    Since the open heart surgery, Mr. McClain has been in the medical care of numerous physicians including Dr. Jay Herman Joerger, Dr. Myra A. Preston, Dr. Andrew Hirsch, Dr. Daniel Kuhn, and Dr. Merlyn Hurd, among others.

31.    All of Mr. McClain's treating health care providers confirm that Mr. McClain has never fully recovered from the open heart surgery and suffers from Chronic Fatigue Syndrome ("CFIDS") and mild Traumatic Brain Injury ("MTBI").

32.    David McClain suffers from significant cognitive deterioration which has dramatically affected his ability to live his life and rendered him unable to work. Mr. McClain suffers from brain dysfunction and CFIDS which renders him unable to concentrate, unable to stay alert, and unable to accomplish normal tasks. Neuropsychological examinations have revealed "brain dysfunction" and a general decline in overall cognitive functioning, weakness, and loss of strength.

33.    The cumulative effect of these deficits following the 1997 open heart

5

surgery have left Mr. McClain unable to perform the essential functions of his job, unable to concentrate, unable to have the strength to perform his previous job duties or the job duties of any position for which he is qualified by training and experience.

34.    Mr. McClain is completely disabled and suffers from a total disability as defined by the policy.

## Union Central's Wrongful Termination of Coverage Under the Policy

35.    Following the commencement of Mr. McClain's total disability on or about July 3, 1997, Union Central honored its commitment to continue coverage and continued to provide the death benefit due to Mr. McClain's total disability. Union Central continued coverage in honoring its contractual obligations for nearly eight years thereafter.

36.    On June 21, 2005, under the pretext of conducting a medical evaluation and after nearly eight years of providing continuous coverage after Mr. McClain's 1997 open heart surgery, Union Central suddenly, unilaterally and falsely asserted that it could not confirm Mr. McClain's total disability and terminated his premium waiver life benefits.

37.    The pretextual stated reasons for termination of benefits are set forth in Union Central's June 21, 2005 letter to David McClain purporting to terminate Mr. McClain's premium waiver life benefits. The June 21, 2005 letter sets forth obvious pretext and innuendo as the basis for denial of coverage.

38.    Union Central's stated reasons for terminating coverage wrongfully relied on selective and inaccurate interpretation of the medical record and completely failed to consider Mr. McClain's MTBI in reaching its decision to terminate benefits. Union Central maliciously attempts to justify its wrongful termination of coverage by relying on statements by physicians which were taken out of context and which were made during treatment to Mr. McClain for conditions wholly unrelated to his disability.

6

39.    Union Central's bad faith is demonstrated amongst other things by the fact that it did not base its denial upon an independent medical examination by an appropriate qualified professional experienced in treating patients with brain dysfunctions and chronic fatigue. Union Central also completely neglected relevant and leading medical treatises concerning Mr. McClain's condition and completely failed to address the opinions of Mr. McClain's forensic Neuropsychologist, Dr. James Lawrence Thomas, and his treating Psychologist, Dr. Jay Herman Joerger, in determining to terminate benefits.

40.    Furthermore, when plaintiff, on September 29, 2005, forwarded Union Central relevant leading authorities concerning the nature and extent of his condition, Union Central maliciously and falsely and in bad faith returned those articles claiming "they are not necessary for our review".

41.    Union Central also attempts to justify its malicious and wrongful termination of coverage by reliance on Dr. Motaz Agabani's notes. However, Dr. Agabani is an Endocronologist who only treats Mr. McClain for thyroid nodules and male hormone replacement therapy, concerns wholly unrelated to Mr. McClain's MTBI and CFIDS. Not only is Mr. McClain's disability beyond the scope of Dr. Agabani's care, expertise, or concern, Union Central mischaracterizes the symptoms as purportedly reported by Dr. Agabani in complete bad faith.

42.    Union Central's bad faith and maliciousness is further evidenced by the fact that it has not even confronted or rebutted the opinions of Dr. Jay Herman Joerger and Dr. James Lawrence Thomas. Rather, through selective reading and misreading of unrelated materials, Union Central has concocted a false justification to maliciously terminate benefits in bad faith.

7

43.    In short, Mr. McClain's condition is unchanged and unimproved since the onset of his disability in 1997. There has been no change in his condition which would justify the unilateral wrongful decision to terminate benefits nearly eight years after the onset of his disability.

44.    On or about September 29, 2005, Mr. McClain appealed Union Central's wrongful termination of coverage and denial of benefits.

45.    By letter dated June 14, 2006, Union Central wrongfully and maliciously purported to affirm the wrongful decision and denied Mr. McClain's good faith appeal.

46.    Union Central, in purportedly confirming its wrongful decision to terminate benefits, relies on a defense medical examination conducted for the purpose of rendering a report to Union Central by Dr. James McGovern. Although not required to do so, plaintiff voluntarily submitted to be examined by Dr. McGovern in good faith. Dr. McGovern completely and entirely ignored Mr. McClain's subjective reports of total exhaustion during the time of testing which is entirely consistent with his diagnosis of chronic fatigue syndrome. Additionally, despite Union Central's express promises to share the raw data and testing conducted by Dr. McGovern, Union Central then unilaterally refused to share that testing and refused to forward that testing to Mr. McClain's treating Neuropsychologist, Dr. James Lawrence Thomas, for comment as it had falsely promised.

47.    It should be expressly pointed out that Union Central expressly agreed, prior to Mr. McClain's decision to voluntarily submit in good faith to testing by Dr. McGovern, that that raw data and information would be shared with Mr. McClain and his forensic Neuropsychologist, Dr. James Lawrence Thomas, so that Dr. James Lawrence Thomas could review it and comment on that testing. Despite its express promise to share that information and despite that Mr. McClain provided Dr. McGovern with Dr. Thomas' raw data and testing, after

8

Mr. McClain voluntarily submitted to the examination, Union Central wrongfully and in malice refused to share that information and refused to forward it to Dr. James Lawrence Thomas for review.

48.    Additionally, despite Mr. McClain's good faith request to limit testing with Dr. McGovern to four hours per session over several days, Union Central scheduled testing for two continuous full days sessions and refused to inform Mr. McClain of its unilateral change of schedule. Forcing Mr. McClain to be subject to two full days of testing tainted the data and made it unreliable.

49.    Dr. McGovern's report is also riddled with misinterpretations and is decidedly prejudiced and one sided. Dr. McGovern's manner of evaluating Mr. McClain was, in essence, to turn a neuropsychological evaluation into an endurance test and then interpret tainted results as if they reflected poor effort. Dr. McGovern ignored, misinterpreted and misstated well established facts. Dr. McGovern refused to share his raw testing and data despite Union Central's promises that it would be shared. His methods of estimating pre-morbid IQ were decidedly biased and interpretations of test scores were incorrect.

50.    In short, Union Central hired Dr. McGovern and paid Dr. McGovern to conduct a defense examination for the purpose of terminating benifits. That examination was decidedly prejudiced, one-sided, and in complete bad faith.

51.    Union Central's reliance on that report is further evidence of Union Central's bad faith.

## Union Central's Conduct Violates Applicable Law

52.    The cumulative actions of Union Central described above amount to egregious tortious conduct directed at Mr. McClain.

9

53.    Union Central's actions directed at Mr. McClain are part of a pattern of
similar conduct directed at the public generally.

54.    By failing to conduct a proper investigation and having Mr. McClain
examined by a proper professional experienced with treating patients with CFIDS, Union Central
wrongfully denied benefits to Mr. McClain and committed business acts and practices under §
349 of the General Business Law.

55.    Section 349 of the New York General Business Law provides, in pertinent
part, as follows:

(a)    Deceptive acts or practices in the conduct of any business, trade or
commerce or in the furnishing of any service in this State are
hereby declared unlawful.

\* \* \*

(g)    This section shall apply all deceptive acts or practices declared to
be unlawful, whether or not subject to any other law of this State,
and shall not supersede, amend or repeal any of the law of this
State under which the Attorney General is authorized to take any
action or conduct any inquiry.

(h)    In addition to the right of action granted to the Attorney General
pursuant to this section, any person who has been injured by reason
of any violation of this section may bring an action in his own
name to enjoin such a lawful act or practice, an action to recover
his actual damages or $50.00, whichever is greater, or both such
actions. The court may, in its discretion, increase the award of
damages in an amount not to exceed three times the actual
damages up to $1,000.00, if the court finds the defendant willfully
or knowingly violated this section.    The court may award
reasonable attorneys fees to a prevailing plaintiff.

56.    Union Central's business practices are governed by § 2601 of the New
York Insurance Law which defines the activities which constitute unfair claims and settlement
practices if engaged in by an insurance company.

57.    Section 2601 is an aid in defining the public interests of the State of New
York.

58.    The following provisions of § 2601 define practices which by definition are deceptive acts and practices:

(1)    Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverage at issue;

(2)    Failing to properly acknowledge communications relating to claims;

(3)    Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

(4)    Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear, except where there is a reasonable basis supported by specific information available for review by the Department that the claimant has caused the loss to occur by arson. After receiving a properly-executed Proof of Loss, the insurer shall advise the claimant of acceptance or denial of the claim within thirty (30) working days; or

(5)    Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

59.    The very nature of disability insurance creates a duty of reasonable care on the part of an insurance company, independent of the contractual allegations under an insurance policy. An insurance company which sells disability insurance undertakes to provide benefits to policy holders who, due to injury or illness, are no longer able to perform the duties of their regular occupation.

60.    The breach of a disability insurance policy by an insurance company harms not only the policyholder financially, and possibly physically, but such a breach also harms society in general by forcing the public to undertake the obligation to provide the benefits that the insurance company wrongfully denied.

61.    Mr. McClain was and continues to be harmed financially on account of Union Central's breaches of its insurance policies.

11

62.    Union Central's violation of these mandated standards of conduct for

insurance companies further shows Union Central's violation of the duty of good faith and fair

dealing which it owes Mr. McClain.

### FIRST CAUSE OF ACTION
### (Declaratory Judgment)

63.    Plaintiff repeats and realleges paragraphs 1 through 62 of this Complaint

as if set forth herein.

64.    Under the Policy, Union Central is obligated to provide disability benefits

to Mr. McClain for the period Mr. McClain was totally disabled.

65.    In spite of its obligations under the Policy as described above, Union

Central has failed and refused to accept its obligation to provide Mr. McClain the full benefits

due under the Policy.

66.    By reason thereof, an actual and justiciable controversy exists between

Union Central as to whether Mr. McClain, from July of 1997 to the present, was entitled to

benefits under the Policy because Mr. McClain was, during that period of time, suffering from a

"disability" as those which are defined by the Union Central insurance policy.

67.    Mr. McClain will be irreparably harmed unless the Court enters a

declaratory judgment determining the rights of the parties in accordance with Mr. McClain's

prayer for relief.

68.    Mr. McClain has no adequate remedy at law.

### SECOND CAUSE OF ACTION
### (Breach of Contract)

69.    Plaintiff repeats and realleges paragraphs 1 through 62 of this Complaint

as if set forth herein.

12

70.    On or about June 2005, Union Central stopped honoring its obligations to Mr. McClain under the Policy, despite the fact that Mr. McClain was then and is to date disabled as that term is used and defined in the Policy.

71.    As a result of Union Central's breach of the Policy, Mr. McClain is suffering financial hardship and mental anguish.

72.    Mr. McClain has satisfied all of this obligations and conditions precedent to recover benefits under the Policy.

73.    Mr. McClain has not waived the recovery of benefits under the Policy.

74.    Mr. McClain is not estopped from recovering benefits under such Policy.

75.    By reason of the foregoing, Union Central is liable to Mr. McClain for damages, the exact amount to be proven at trial.

### THIRD CAUSE OF ACTION
**(Breach of Covenant of Good Faith and Fair Dealing)**

76.    Plaintiff repeats and realleges paragraphs 1 through 62 of this Complaint as if set forth herein.

77.    By selling the Policy to Mr. McClain and collecting substantial premiums for the Policy, Union Central assumed a duty of good faith and fair dealing toward Mr. McClain. The Policy contained an implied promise that Union Central would deal fairly and in good faith with Mr. McClain and would do nothing to injure, frustrate, or interfere with Mr. McClain's rights to receive the benefits of the Policy.

78.    In addition to what is set forth supra, Union Central breached its duty of good faith and fair dealing toward Mr. McClain in one or more the following ways, among other things:

a.    By failing to provide insurance coverage at the time Union Central knew or reasonably should have known that Mr. McClain was entitled to such insurance coverage;

13

b.     By interpreting ambiguous Policy provisions against Mr. McClain and in favor of its own financial interest;

c.     By interpreting the factual circumstances of Mr. McClain's disability condition against Mr. McClain and in favor of its own financial interest;

d.     By failing to provide a reasonable explanation of the basis for the denial of disability benefits to Mr. McClain;

e.     By failing to have Mr. McClain examined by a professional who specializes in treatment of CFIDS;

f.     By having Mr. McClain wrongfully examined by a neurologist who knows nothing of CFIDS and is completely unfamiliar with treating patients and has no knowledge of Chronic Fatigue Syndrome.

g.     By failing to inform Mr. McClain of all possible bases of insurance coverage;

h.     By denying Mr. McClain insurance coverage on the basis of a dollar amount of benefits owed and potentially owed to Mr. McClain under the Policy, rather than on the language of the Policy and the factual circumstances of Mr. McClain's disability condition;

i.     By compelling Mr. McClain to initiate this action to obtain insurance coverage to which Mr. McClain is entitled under the Policy;

j.     By misrepresenting Policy coverages, conditions, exclusions and other provisions;

k.     By failing to provide a full copy of the Group Life Policy despite requests; and

l.     By promising to provide copies of all documents reviewed by Union Central in determining to deny benefits and then maliciously refusing to provide them.

79.     By reason of Union Central's wrongful acts and breach of the covenant of good faith and fair dealing, Union Central is liable to Mr. McClain for compensatory and punitive damages, the exact amount to be proven at trial, including, but not limited to, all of Mr.

14

McClain's disability benefits owed to him for the period of his disability, all consequential in exemplary damages, together with attorneys' fees, costs and disbursements that have been incurred to date and which may be incurred by Mr. McClain in connection with prosecuting this action to recover insurance.

### FOURTH CAUSE OF ACTION
(Violation of General Business Law § 349)

80.    Plaintiff repeats and realleges paragraphs 1 through 62 of this Complaint as if set forth herein.

81.    Union Central's deceptive acts and practices are in violation of General Business Law § 349.

82.    By reason of Union Central's violation of General Business Law § 349, Union Central is liable to Mr. McClain for statutory damages, including but not limited to, reasonable attorneys' fees, costs and disbursements that have been incurred to date and which may be incurred by Mr. McClain in connection with the prosecution of this action to recover insurance.

WHEREFORE, plaintiff, David McClain, demands judgment against defendant Union Central as follows:

a.    On the first cause of action, this Court determine and declare that Mr. McClain, from July of 1997 to present, was entitled to benefits under the Policy because Mr. McClain was, during that period of time, disabled as that word is defined in the Policy;

b.    On the second cause of action, an award of damages, the exact amount to be proven at trial;

c.    On the third cause of action, an award of damages, the exact amount to be proven at trial, including, but not limited to, all disability benefits owed to Mr. McClain for the period of his disability, together with attorneys' fees, costs and disbursements that have been

15

incurred to date and which may be incurred by Mr. McClain in connection with the prosecution of this action to recover insurance;

      d.      On the fourth cause of action, an award of statutory damages, the exact amount to be proven at trial, including, but not limited to, attorneys' fees, costs and disbursements that have been incurred to date and which may be incurred by Mr. McClain in connection with the prosecution of this action to recover insurance; and

      e.      On all claims for relief, Mr. McClain's attorneys' fees, costs and disbursements in this action together which such other and further relief as the Court may deem just, proper and equitable.

Dated: Goshen, New York
      June 20, 2007

FOULKE LAW OFFICES

By: _____
      Evan M. Foulke, Esq.
Attorney for Plaintiff
1997 Route 17M
P.O. Box 239
Goshen, New York 10924
(914) 294-4308
845

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK       )
                                ) SS. :
COUNTY OF NASSAU        )

      I, Lisa Sullo being sworn, say:

      I am not a party to the action, am over 18 years of age and reside in West Babylon, New York.

      On August 28, 2007, I served the within **Affirmation of Norman L. Tolle,** by depositing a true copy thereof, enclosed in a wrapper addressed as shown below, into the custody of Federal Express for overnight delivery, prior to the latest time designated by that service for overnight delivery.

      Evan M. Foulke, Esq.
      FOULKE LAW OFFICES
      Attorneys for Plaintiff
      1997 Route 17M
      Goshen, New York  10924

                                 _____
                                   Lisa Sullo

Sworn to before me this
28th day of August, 2007

_____
Notary Public

SUSAN M. DAVIES
Notary Public, State of New York
No. 01DA6129334
Qualified in Suffolk County
Commission Expires June 20, 2009